BRYAN TRIPP v. HENRY HARRIS.

(Filed 8 March, 1911.)

1. Mortgages—Principal and Surety—Payment by Surety—Assignment of Mortgage—Debtor and Creditor—Security.

When the surety pays a note of his principal, and has the note and a mortgage securing it transferred directly to himself, he becomes a simple contract creditor of the principal and the owner of the mortgage to secure the payment of the debt. This case is distinguished from those wherein a judgment has been obtained against the principal and surety, or where there is a mortgage and the rights of third persons as creditors or purchasers have intervened.

2. Same—Landlord and Tenant—Liens—Priority.

The plaintiff, a landlord, became surety on his tenant's note and joined with him in a mortgage of the former's personal property and on the crops to be raised by the tenant during that crop year. He also made advances to the tenant to enable him to make the crop. The tenant, the defendant, failed to pay the note and his landlord paid it, as surety, and had the note and mortgage assigned to himself: *Held*, the effect of the plaintiff's executing the mortgage was to relinquish his landlord's lien on the crop in favor of the mortgagee, and not to surrender his rights against the tenant; and having paid the note, he could first apply the proceeds of the sale of the crop to the satisfaction of his superior lien as landlord, against the will of the tenant, the defendant. *Lee v. Manly, ante,* 244, cited and distinguished.

APPEAL by defendant from *Ward, J.,* at September Term, 1910, of PITT.

On 21 January, 1909, the defendant, who was then a tenant of the plaintiff, purchased a horse of J. R. Harvey & Co., at the price of $130, and executed his note therefor, to which the plaintiff was surety. On the same day the defendant executed to the said Harvey & Co. a chattel mortgage to secure said note, by which he conveyed said horse, an iron-axle cart, and the crops to be raised by him in 1909. The plaintiff joined in said mortgage. The defendant failed to pay said note when it became due, and thereafter the plaintiff paid the amount thereof to Harvey & Co., and the note and mortgage were assigned to him.

TRIPP v. HARRIS.

The plaintiff, as landlord, made advances to the defendant during said year to enable him to make a crop, amounting to $289.34, and he received from the proceeds of the crops $239.38. The defendant demanded that said proceeds be applied to the satisfaction of said debt and mortgage of $130, which the plaintiff refused to do. The plaintiff applied the proceeds of the crop to said account for supplies, and brings this action to recover the horse and cart, claiming to be the owner by virtue of said mortgage. The defendant resists recovery upon two grounds:

(1) That a payment by the plaintiff, who was surety, and taking an assignment to himself, extinguished the mortgage.

(2) That by executing the mortgage, the plaintiff agreed that the crops should be applied in payment of the debt of $130, and that this could not be changed without the consent of the defendant.

*Jarvis & Blow for plaintiff.*
*Julius Brown for defendant.*

ALLEN, J., after stating the case: Counsel for defendant has cited a large number of cases from our Reports, holding that a payment by the surety, without taking an assignment to a trustee, extinguishes the debt, but these cases will be found to belong to one of two classes.

In one class are judgments against principal and surety, and notes and bonds executed by both. In such case, payment by the surety without an assignment to a trustee is held to be a satisfaction of the evidence of the indebtedness as it then existed, and the surety becomes a simple contract creditor of his principal.

In the other class are notes or bonds secured by mortgage, and the rights of a third party as creditor or purchaser intervene.

Our case belongs to neither class. We have here a note which the surety has paid, secured by a mortgage, and the contest is between the principal and his surety.

It seems, according to the opinion of *Chief Justice Ruffin* in

*Hanner v. Douglass,* 57 N. C., 265, that prior to the Statute of Anne, the rule in England was that the surety, upon payment of a note or judgment, could take an assignment to himself or to another for him, and that after that statute the assignment was made to a trustee for his benefit, to avoid any difficulty from a plea of payment; but that before and after the statute a mortgage given to secure the debt could be assigned directly to the surety. After stating this doctrine, he adds: "In this State the same doctrine has prevailed, with this modification, that, in order to keep the security on foot, when it is a bond or judgment, it is necessary to take an assignment to a third person." To the same effect is *York v. Landis,* 65 N. C., 536. The note or bond is the evidence of the indebtedness, and when it is paid, without an assignment to a third person, it ceases to exist, but there is an implied promise upon the part of the principal to repay the surety. The mortgage is the security for the debt and collateral to it.

In *McCoy v. Wood,* 70 N. C., 129, *Justice Rodman,* speaking for the Court, says: "The law is, that if a surety pays a bond of his principal, for which there is no collateral security, the bond is thereby extinguished, unless he takes an assignment to a trustee. But in equity it is held that if the creditor has taken a collateral security for the debt, the surety, on payment, is subrogated to the rights of the creditor in the security without an express assignment."

In *Liles v. Rogers,* 113 N. C., 200, *Chief Justice Shepherd* announces the doctrine as follows: "As soon as a surety has paid the debt, an equity arises in his favor to have all the securities which the creditor holds against the principal debtor transferred to him, and to avail himself of them as fully as the creditor could have done. The securities referred to do not include those which are extinguished by the payment of the debt, such as the bond securing such principal debt, and unless the surety procures it to be assigned for his benefit to a third person, it is utterly extinguished both at law and in equity, and he becomes a simple contract creditor, and entitled to be subrogated only in respect to the collateral securities taken and held by the creditor," and in the same opinion he quotes

with approval from *Lord Eldon* that, "In the case, for instance, wherein, in addition to the bond, there is a mortgage with a covenant on the part of the principal debtor to pay the money, the surety paying the money would be entitled to say, 'I have lost the benefit of the bond, but the creditor has a mortgage and I have a right to the benefit of the mortgaged estate which has not got back to the debtor.'"

The text-books and the decisions from other States are in accord with this view, except in a number of the States the surety is treated as a purchaser, and he takes the evidence of indebtedness and all securities as they existed in the hands of the creditor. We cite a few authorities from a large number: Sheldon on Subrogation, secs. 86 and 87; *Lewis v. Palmer,* 28 N. Y., 271; *Tarp v. Gulseth,* 37 Minn., 135; *Garson v. Brown,* 11 Pa. St., 531.

In Brandt on Suretyship, sec. 347, it is said: "A surety who pays the debt of his principal is entitled to subrogation to a mortgage given by the principal to the creditor for the security of the debt, and he may, with or without a formal assignment thereof, have the same foreclosed in his own name, for his benefit."

We therefore conclude that the plaintiff, upon paying the note, and taking an assignment to himself of the note and mortgage, became a simple contract creditor of the defendant and the owner of the mortgage to secure payment of his debt. He was also landlord, and his lien on the crops to secure advances was superior to that as owner of the mortgage, and he had the right, against the will of the defendant, to apply the crops first to the account for supplies, unless his act in signing the mortgage prevents him from doing so. We do not think it has this effect. The purpose and effect of the execution of the mortgage was to relinquish his lien in favor of Harvey & Co. to enable the defendant to buy a horse, and not to surrender his rights against his tenant. It is this condition which distinguishes this case from *Lee v. Manly, ante,* 244.

If the contention of the defendant should prevail, he would have a horse for which he promises to pay $130, and upon

which he gave a mortgage to secure the debt, without the payment of one cent, and the plaintiff, his surety, must bear the loss.

We find no error, and the judgment is

Affirmed.